ROBERT W. THOMPSON, Esq. (Cal. SBN 106411)
Attorney has complied with LR IA 10-2
KATHLEEN M. HARTMAN, Esq. (Cal. SBN 219934)
Attorney has complied with LR IA 10-2
**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel:   (949) 261-2872
Fax:  (949) 261-6060
Email: khartman@ctsclaw.com
           rthompson@ctsclaw.com

Jude Nazareth, Esq.
Montez Nazareth Law
P.O. Box 401506
Las Vegas, NV 89140
Phone: (702) 948-7474
Fax:    (702) 549-2736
Email:  jude@mnlawonline.com

Attorneys for Plaintiff,
**CHAD CHOLETTE** individually and on behalf of others similarly situated

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA – LAS VEGAS

| | |
|---|---|
| CHAD CHOLETTE, individually and on Behalf of other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INSTALLPRO, INC., a Utah Corporation, d.b.a IPRO, Inc. in Nevada,<br><br>Defendant. | Case No.: 2:10-cv-02153 APG-VCF<br>JUDGE ANDREW P. GORDON<br>COMPLAINT DATE: 12/12/2010<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL CERTIFICATION OF COLLECTIVE ACTION; APPROVAL OF SETTLEMENT OF FAIR LABOR STANDARD ACTS CLAIMS; AND APPROVAL OF AWARD OF ATTORNEYS' FEES AND COSTS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

NOTICE IS HEREBY GIVEN that Plaintiff Chad Cholette submits this Motion for Final Certification of Collective Action; Approval of Settlement of Fair Labor Standard Acts Claims; and Approval of Award of Attorneys' Fees and Costs.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, affidavits, pleadings and other exhibits in support thereof, as well as any documents or testimony presented at the time of hearing.

DATED: November 4, 2013        **CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By     *s/Kathleen Hartman*
       KATHLEEN M. HARTMAN
       Attorneys for Plaintiff
       **CHAD CHOLETTE**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a collective action under the Fair Labor Standards Act ("FLSA") brought by Plaintiff Chad Cholette for unpaid wages. A class has previously been conditionally certified. Plaintiff, on behalf of himself and the conditionally certified class, and Defendant InstallPro, Inc., now known as Haloprime, Inc. ("Defendant") have reached a settlement of all claims in this action. The terms of the settlement are memorialized in the written Settlement Agreement ("Agreement") attached to the Declaration of Kathleen Hartman at Exhibit 1 filed herewith. Under the terms of the Agreement, the FLSA Collective Action is being settled for a total gross amount of $225,000.00 for the thirteen persons who opted into the conditionally certified class ("the Class").

Pursuant to the terms of the Agreement, the Plaintiff on behalf of the Class requests this Court to enter a written order granting final certification of the Class and approving the terms of the Agreement because the settlement is fair, reasonable, and adequate.

## II. STATEMENT OF FACTS

On December 12, 2010, Chad Cholette filed this action as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") on behalf of all persons who were employed by InstallPro as Satellite Technicians. Doc. No. 1. Defendant's Satellite Technicians travel to various customer locations and install satellite equipment for use with products such as DirectTV. They also show customers how to work the equipment. The Complaint sought recovery of overtime and minimum wages for all Satellite Technicians who worked for Defendant. *Id.* Further, the Complaint alleges that during their employment the Satellite Technicians were subjected to a "hold back" of wages just to work for Defendant, were required to work for free during their first week of employment, were made to purchase work materials and insurance from Defendant, were subjected to chargebacks to their earned wages, were not paid for all hours that they

worked, and were not paid overtime pay. Defendant denied and continues to deny the allegations and claimed that the Satellite Technicians were paid on a piece rate basis that covered all their expenses and met all minimum wage and overtime requirements. Doc. No. 19.

On June 13, 2012, United States District Court Judge Kent J. Dawson granted Plaintiff's Motion for Conditional Certification as to three classes of satellite technicians who worked from June 13, 2009 to June 13, 2012: the Overtime Class, the Minimum Wage Class, and the Training Time Class. Doc. No. 33. Of the forty-seven (47) potential class members, thirteen (13) opted into the class and are class members whose claims are resolved through this Agreement. Doc. Nos. 1, 9, 32, 34-43, and 47.

After Conditional Certification, the Parties engaged in extensive discovery directed at the claims of each Opt-In Class Member. Decl. Hartman at ¶ 3. Defendant produced approximately 2,700 pages of records and responded to written discovery requests. *Id.* The Class members produced the limited amount of documents in their control and responded to written discovery requests. *Id.*

There is a dispute between the Parties over whether the Class members were required to keep actual and accurate time records. *Id.* at ¶ 4. The Class contends that the time records produced by Defendant do not accurately reflect the time they actually worked. *Id.* In particular, the Class claims that the records do not account for time spent at Defendant's location receiving instructions for jobs, filling out paperwork, driving to job sites, and handling customer calls after the completion of a job. *Id.* Defendant claims that the records are accurate and that the Class members were paid all of their wages. *Id.*

### III.     SETTLEMENT DISCUSSION

During the course of the litigation, the Parties engaged in two court-ordered mediations. The first mediation was before Magistrate Judge Robert J. Johnston and was prior to the Court's Order on Conditional Certification. Doc. Nos. 23 & 24. The second mediation was a private mediation before Hon. Lawrence Leavitt (ret.) on July 18, 2013, that lasted approximately thirteen (13) hours. Decl. Hartman at ¶ 5. It was at this

- 4 -

1  mediation that the Parties entered into a Memorandum of Understanding that resulted in
2  the Agreement presented in this Motion.  *Id.*

3  **IV.    SUMMARY OF THE SETTLEMENT AGREEMENT**

4      **A.    Payment to the Class Members**

5      Because the time records are incomplete, in order to determine the amount of
6  damages for the Class, Class Counsel spoke with the Class members, reviewed the Class
7  member's documents, and analyzed other similar cases.  *Id.* at ¶ 6.  Some information
8  that was particularly useful came from class representative Chad Cholette.  Mr. Cholette
9  had retained some records that showed the various locations that he traveled to each day
10 to install satellite equipment.  *Id.*  Using these records, Mr. Cholette did MapQuest
11 inquiries to plan the routes he took on days he worked.  *Id.*  This research provided
12 mileage estimates and drive time estimates, which was used along with information
13 obtained from class members, documents showing actual deductions from wages, wages
14 paid, and dates of employment, to calculate amounts due to each Class member.  *Id.*
15 Through this method, Counsel determined the estimated total due to the thirteen Class
16 members was $275,925.00.  *Id.*

17     Defendant disputed this amount and claimed, with support of an expert, that some
18 Class members were entitled to nothing and that others may potentially only have very
19 small claims.  *Id.* at ¶ 7.  Through the assistance of the mediator, the Parties were able to
20 negotiate a total sum payment to the Class members of $225,000.00 ("Settlement
21 Amount").  *Id.* at Ex. 1.  The Settlement Amount represents just slightly over 80% return
22 to the Class members on their estimated damages.

23     Defendant claimed at mediation that it is not financially able to afford to pay the
24 entire Settlement Amount in one payment.  Therefore, the Parties negotiated and agreed
25 to the following payment schedule:

26     (1)    Defendant will make an initial payment of Sixty Thousand Dollars
27 ($60,000.00), less applicable federal and state employee payroll withholding taxes, to the
28 Settlement Class Members four (4) months after this Agreement is signed by Defendant,

- 5 -

1   the Class Representative, and their counsel (i.e., from the latest date of signing).

2       (2)    A second payment of Twenty Thousand Six Hundred Twenty-Five Dollars
3   ($20,625.00), less applicable federal and state employee payroll withholding taxes, will
4   be paid to the Settlement Class Members by Defendant thirty (30) days after the initial
5   payment.

6       (3)    Seven (7) additional payments of Twenty Thousand Six Hundred Twenty-
7   Five Dollars ($20,625.00), less applicable federal and state employee payroll withholding
8   taxes, will be paid to the Settlement Class Members by Defendant every thirty (30) days
9   after the second payment until the balance of the Two Hundred Twenty-Five Thousand
10  Dollars ($225,000.00) has been paid off.

11      (4)    The second through ninth payments will have added to the Twenty
12  Thousand Six Hundred Twenty-Five Dollars ($20,625.00) payment an additional amount
13  reflecting a Two Percent (2%) annual interest rate on the balance of the Settlement
14  Amount due and owing.

15      (5)    The Settlement Amount, except for the interest payment, will be considered
16  wages and will be reduced by all applicable federal and state employee payroll
17  withholding taxes, as referenced above. Defendant will pay the employer's portion of
18  any taxes due and will not deduct this payment from the Settlement Amount.

19      Decl. Hartman at Ex. 1.

20      The Settlement Amount will be divided proportionally between the Class members
21  based on each Class members' calculated damages. *Id.* at ¶ 8. Settlement Payments to
22  the Class range from a low of $100 to a high of almost $72,000. *Id.* With the exception
23  of one Class member who is receiving $100 because it was questionable whether he had
24  any work time during the class period, the Class members are receiving significant
25  individual settlement payments. *Id.* Two members of the Class are receiving more than
26  $36,000, one of the Class members is receiving more than $19,000, one Class member is
27  receiving more than $14,000, one Class member is receiving more than $9,500, one Class
28  member is receiving more than $8,500, one Class member is receiving more than $5,000,

- 6 -

1  and three Class members are receiving more than $3,500.  Reaction from the Class has
2  been very positive.  *Id.*
3      The Agreement includes a provision that if a Class member does not cash his
4  check within 360 days of issue, the non-negotiated check will escheat to the State of
5  Nevada where the Class member can make a claim for the funds as provided by law.
6  There is also a provision in the Agreement that Defendant will replace lost checks upon
7  the request of a Class member.  *Id.* at Ex. 1.

### B. Payment of Attorneys' Fees and Costs

After the Parties completed negotiation of the Settlement Amount to the Class, the counsel for the parties negotiated payment of attorneys' fees and costs.  *Id.* at ¶ 9.   The agreed to amount for attorneys' fees and costs is $150,000.00.   Payment of the fees and costs are subject to Court approval.  The fees and cost are to be paid on the same schedule and based on the same percentages as the Settlement Amount being paid to the Class.  The schedule is as follows:

(1) An initial payment of Thirty-Nine Thousand Nine Hundred Dollars ($39,900.00) will be paid to Class Counsel four (4) months after the Agreement is signed by Defendant, the Class Representative, and their counsel (i.e., from the latest date of signing).

(2) A second payment of Thirteen Thousand Seven Hundred Sixty-Two Dollars and Fifty Cents ($13,762.50) will be paid to the Class Counsel by Defendant thirty (30) days after the initial payment.

(3) Seven (7) additional payments of Thirteen Thousand Seven Hundred Sixty-Two Dollars and Fifty Cents ($13,762.50) will be paid to the Class Counsel by Defendant every thirty (30) days after the second payment until the balance of the One Hundred and Fifty Thousand Dollars ($150,000.00) has been paid off.

(4) The second through ninth payments will have added to the Thirteen Thousand Seven Hundred Sixty-Two Dollars and Fifty Cents ($13,762.50) payment an additional amount reflecting a Two Percent (2%) annual interest rate on the balance of

1 the amount of the attorneys' fees and costs due and owing.

2 **V.     LEGAL AUTHORITY FOR FINAL CLASS CERTIFICATION**

When parties reach a settlement in a collective action that has been conditionally certified, the Court must still make a final determination concerning class certification. *Burkholder v. City of Fort Wayne,* 750 F. Supp. 2d 990, 993 (N.D. IN 2010); *Carter v. Anderson Merchandisers, LP,* 2010 U.S. Dist. LEXIS 55581, *14 (C.D. Cal. 2010).  To maintain an opt-in class under the FLSA, there must be a showing that the conditional class members are similarly situated.  *Burkholder*, 750 F. Supp. 2d at 993; *Carter,* 2010 U.S. Dist. LEXIS 55581, *13.

To determine whether the conditionally certified class members are similarly situated, a court may weigh the following factors:  "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural considerations."  *Id.*  All of these factors weigh in favor of final certification of the class.

    **A.     The Factual and Employment Setting of the Individual Plaintiffs and Similar**

The Satellite Technicians are similarly situated.  All thirteen of the Conditional Certified Class members were all Satellite Technicians in Nevada.  Doc. No. 33.   Each Class member was paid on a piece rate basis.  Decl. Hartman at Exs.  2-4. Each Class member was not reimbursed for travel expenses.  *Id.*  Defendant had a written check list with requirements that applied to all Satellite Technicians.  *See e.g. Id.* ¶ 19 and at Ex. 5. When there is evidence that job duties are defined by corporate policies and procedures, district courts routinely grant class certification.  *Burkholder*, 750 F. Supp. 2d at 994; *Carter,* 2010 U.S. Dist. LEXIS 55581, *18.  Additionally, there was a standard subcontractor agreement that applied to the Class members.  *See e.g. Id.* ¶ 20 and at Ex. 6.  In fact, the similarities between Class members are so prevalent that Defendant's responses to discovery concerning each particular class member were virtually identical. *See e.g.* Decl. Hartman at Exs. 2-4.

### B. The Defenses Available to the Defendant is as to each of the Class Members are Similar

Based on the written discovery responses, it is clear that Defendant intended on claiming that the piece-rate pay paid to each of the Class members compensated them for all of their time and that any overtime would be compensated at half-time. *See e.g. Id.* at Ex. 2, Responses 15, 28, 41, 54, 67, 80, 93, & 106. Given the similarity to each and every discovery response for each of the Class members, it was clear that Defendants intended to raise the same defenses for each class member. A similar defense as to all claims supports class certification. *Carter,* 2010 U.S. Dist. LEXIS 55581, *18-19.

### C. The Fairness and Procedural Considerations Weigh in Favor of Finding the Class Members are Similarly Situated

Granting final certification of this class and approving the settlement will resolve the wage and hour claims of thirteen individuals who many not otherwise be able to maintain their own claims. The ability to pool resources for litigation is a procedural consideration that supports class certification. *Id.* at *19; *Burkholder*, 750 F. Supp. 2d at 994. Further, this is not a case where final certification of a class may include people who did not actively take steps to become a part of this case. Instead, each and every Class member affirmatively gave their consent to be part of this action and have their claims resolved collectively.

Accordingly, Plaintiff on behalf of himself and the conditionally certified class request this Court grant final class certification of this action.

## VI. LEGAL AUTHORITY FOR APPROVAL OF THE SETTLEMENT

As a general matter, settlement of claims brought under the FLSA requires court approval. *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) ; *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). However, unlike settlements under Rule 23 of the Federal Rules of Civil Procedure, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required.

- 9 -

1    Pursuant to a private enforcement action under 29 U.S.C § 216(b) of the FLSA,
2 the district court may approve a settlement of contested litigation to resolve a bona fide
3 dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353; *Yue Zhou v. Wang's*
4 *Restaurant*, No. C05-0279, 2007 U.S. Dist. LEXIS 3405, *2 (N.D. Cal. Aug. 8, 2007)
5 ("The proper procedure for obtaining court approval of the settlement of FLSA claims is
6 for the parties to present to the court a proposed settlement, upon which the district court
7 may enter a stipulated judgment only after scrutinizing the settlement for fairness."). The
8 Court must "determine whether the settlement is a fair and reasonable resolution of a
9 bona fide dispute." *Trinh v. JP Morgan & Chase Co.*, 2009 U.S. Dist. LEXIS 16477, *2
10 (S.D. Cal. 2009). Typically, courts rely on the adversarial nature of a litigated FLSA case
11 resulting in settlement as indicia of fairness. *Lynn's Food Stores*, 679 F.2d at 1354. If
12 the proposed settlement reflects a reasonable compromise over contested issues, the court
13 may approve the settlement in order to promote the policy of encouraging settlement of
14 litigation. *Id.*; *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir.
15 1986).

16    Federal courts routinely approve similar settlements reached in FLSA collective
17 actions. *See, e.g.*, *Burkholder*, 750 F. Supp. 2d at 997; *In Re: Wells Fargo Loan*
18 *Processor Overtime Pay Litig.,* 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. 2011); *Gribble*
19 *v. Cool Transports, Inc.*, 2008 U.S. Dist. LEXIS 115560 (C.D. Cal. 2008); *Glass v. UBS*
20 *Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007).

21    **A.    The Settlement Resolves a Bona Fide and Contested Dispute**

22    This litigation was strongly contested, protracted, and reflected a bona fide and
23 contested dispute between the parties. Plaintiff filed this action in December 2010. Doc.
24 No. 1.  On June 29, 2011, the parties participated in an Early Neutral Evaluation before
25 the Magistrate Judge but were unable to resolve the dispute. Doc. Nos. 23 & 24. On
26 October 7, 2011, Plaintiff filed a motion for Conditional Certification Pursuant to 29
27 U.S.C. § 216(b). *Id.* at 25. On June 13, 2012, Plaintiff's motion was granted and opt-in
28 notices went out to the potential class members. *Id.* at 33. Thirteen Class members

- 10 -

1  opted-in and the parties began conducting discovery as to each Class member.  Doc. Nos.
2  1, 9, 32, 34-43, & 47.

3  Because the Class contended that accurate records were not kept of all time the
4  driving time or the expenses associated with travel to the job sites, there was a bona fide
5  dispute over the number of hours each Class member worked and the actual expenses that
6  they incurred.  Defendant also alleged that the Satellite Technicians were independent
7  contractors because each of them had signed independent contractor agreements.   While
8  the Class vigorously disagrees with Defendant's position, it was a dispute that would
9  need to be resolved through motion or at trial.

### B.     The Proposed Settlement Is Fair and Reasonable

The second prong of the Court's settlement approval inquiry focuses on the fairness and reasonableness of the proposed settlement.  This settlement was the product of arm's-length negotiations by experienced counsel and an experienced and respected mediator, Hon. Lawrence Leavitt (ret.).  The mediation lasted thirteen hours and the resulting settlement has the salutary effect of (1) providing substantial and immediate relief to the Class members, and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits.

### 1.     The Amount Offered in Settlement is Reasonable

The compensation this settlement makes available to Class members is favorable and provides them with slightly more than 80% recovery on their estimated damages claims.  Under an objective standard for a settlement this is a reasonable tradeoff for certainty of recovery.  Although the Settlement Amount is paid out over time, the Class will receive their payments sooner than they would if this matter went to trial and, potentially, through an appeal.  The Agreement also provides interest to the Class in exchange for the payment plan.  Further, a settlement now under the terms provided helps to ensure that Class members will receive payment in uncertain economic times.

This is not a case where the settlement to the class consists largely of injunctive relief or of modest monetary recovery.  Of the thirteen (13) Class members, twelve are

1  receiving payments of more than $3,500 and five of those are receiving five-figure
2  settlement payments. Although it is possible that the maximum possible award at trial
3  could be larger than the settlement amount, it is also possible that the recovery could be
4  smaller.
5       The inquiry as to whether a settlement is reasonable requires an examination into
6  the benefits of the settlement in light of the risks of establishing liability and damages.
7  *Singer v. Becton Dickinson and Co.*, No. 08-CV-821, 2009 U.S. Dist. LEXIS 114547
8  (S.D. Cal. Dec. 9, 2009) (finding the amount offered in settlement to be adequate "in light
9  of the uncertainties involved"); *Sandoval v. Tharaldson Employee Mgmt.*, No. EDCV 08-
10  00482, 2009 U.S. Dist. LEXIS 111320 (C.D. Cal. Nov. 17, 2009) (settlement amount was
11  reasonable considering, among other factors, the risk of proving liability and damages at
12  trial); *Glass,* 2007 U.S. Dist. LEXIS 8476 (finding settlement of wage and hour class action
13  for a percentage of the claimed damages to be reasonable in light of uncertainties
14  involved in the litigation). Here, each Class member would need to prove their damages
15  and that could be challenging given the lack of accurate records. A settlement based on
16  reasonable estimates provide certainty to each class member.
17       **2.     The Expense, Complexity, and Duration of Further Litigation**
18       This case is complex and carries significant risks for the Parties as to both legal
19  and factual issues. There is no question that litigating the case to trial would require
20  substantial time and expenses in addition to that already expended. Among the risks
21  faced by the Class was the uncertainty of maintaining a certified collective action.
22  Defendant intended to file a motion to decertify the class. If that motion was successful,
23  then it is possible that the Class members would have received nothing without bringing
24  their own individual actions. Some Class members no longer live in Nevada and it would
25  be difficult for them to participate in litigation while living out of state. Decl. Hartman
26  at ¶ 10. Others have difficulty with time and the expense associated with litigation. *Id.*
27  Finally, it is very likely that in the event the Class did prevail at trial, Defendant would
28  appeal the result. It is safe to say that trial preparation, trial and post-trial litigation could

consume at least another three years before there would be finality in this litigation. These factors weigh in favor of settlement.

### 3. The Experience and Views of Counsel

The experience of Class Counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is fair." *Linney v. Alaska Cellular P'ship*, No. C-96-3008, 1997 U.S. Dist. LEXIS 2430 (N.D. Cal. July 18, 1997) *aff'd* 151 F.3d 1234 (9th Cir. 1998). Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight. *Gribble*, 2008 U.S. Dist. LEXIS 115560.

The Class had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. Decl. Hartman ¶ 11. As with all aspects of this litigation, the settlement negotiations were hard-fought and at arm's length. *Id.* at ¶ 12. In Class Counsels' view, the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. *Id.* Because this settlement is fair, adequate, and eminently reasonable, the Parties request that it be approved.

### B. The Attorneys' Fees and Costs are Fair and Reasonable

Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to an award of reasonable attorneys' fees. In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, Class Counsel negotiated recovery of $150,000 for fees and costs.

The Ninth Circuit sets out a non-exhaustive list of factors which may be relevant

- 13 -

to a district court's determination of the fees ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Each of these factors also supports the agreed-upon attorney fee request:

### 1. The Results Achieved by the Settlement were Excellent

This settlement did not result in small amounts being paid to Class members or receipt of coupons.  Instead, the Class members are receiving significant payments that constitute thousands of dollars in every case but one.  When Class Counsel conveyed the results to Class members the overall opinion was positive and, in fact, most people expressed amazement that they were receiving so much because they had heard stories of class actions not providing much recovery.   Decl. Hartman at ¶ 8.

### 2. The Risk of Continued Litigation

If this matter had not settled, Defendant would likely have brought a motion to decertify the class.  Even if Defendant's motion was unsuccessful, the Class would have likely faced a Motion for Summary Judgment and, if that was unsuccessful, trial.  Each of these procedures entailed risk for the Class.  Also, as expressed above, the documentary records that the Class would need to prove their claims were incomplete.  Therefore, trial could have consisted of the individual Class members having to take the witness stand to prove their damages.  As in any litigation, jury trials have risks to both sides and it can be expensive to all involved.

### 3. The Skill Required and Quality of Work

Counsel effectively and diligently prosecuted this challenging and complicated case.  Class Counsel successfully obtained Conditional Certification of this action and engaged in discovery on behalf of the entire class.   Doc. No. 33; *see e.g.* Decl. Hartman at Exs. 2-4.  Class Counsel believes its experience and the fact that it was able to obtain Conditional Certification of the Class was a significant factor in resolving this action. The more people who asserted claims against the Defendant provided greater potential

- 14 -

exposure for the Defendant.  In Class Counsel's opinion, this added pressure, along with the fact that if the action was ultimately decertified it would not end the litigation but only expose Defendant to multiple smaller cases that it would have to defend, helped resolve this case.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by the Plaintiffs

Class Counsel took this case on contingent in 2010.  Decl. Hartman at ¶ 13.  Class Counsel advanced costs and work without pay since inception of the case without any guarantee of recovery.  *Id.*  In this litigation, Class Counsel has incurred $10,164.19 in out of pocket costs.  *Id.*   These costs include such things as filing fees, copying costs, expenses to travel to Nevada from California to attend two mediations, and private mediation costs of $4,372.69. *Id.*  The Class Representative could not have afforded to advance costs of the litigation or pay for an attorney without this case being taken on contingency.  *Id.*   Class counsel is entitled to recovery of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

Class counsel has spent more than 480 hours of attorney time in this action.  *Id.*  at ¶ 14.  Class counsel's time is broken down as follows:

| Job Title | Hours | Rate | Fee Amount |
| --- | --- | --- | --- |
| Shareholders | 32.9 | $450 | $14,805 |
| Partners | 299.5 | $400 | $119,800 |
| Associates | 140.1 | $300 | $42,030 |
| Paralegals | 14.9 | $175 | $2,607 |
| **Grand Total** | | | **$179,242** |

Class counsel expects to spend additional time monitoring the settlement payments, fielding questions from Class members, and, if necessary, appearing at a hearing on this Agreement and/or responding to any questions from the Court. *Id.*  Based

- 15 -

1  on the time already spent on this matter and the costs incurred, Class counsels' fees and
2  costs total $189,406 but Class counsel agreed to reduce its fees and costs to $150,000 in
3  order to secure what it believes is an excellent settlement for Class members. *Id.*

### 5. The Requested Fees are in Line with other Cases

The fees requested in this case represent less than the normal hourly rate that Class Counsel has been awarded for class actions in the past. *Id.* at ¶ 15. Further, the fees and costs do not reduce the amount being paid to the Class in any way because the fees and costs were negotiated after the Settlement Amount for the Class was finalized. Payment of the attorneys' fees and costs are treated in the exact same manner as payment of the Settlement Amount to the Class members. *Id.* at Ex. 1. Therefore, Class Counsel requests this Court approve its request for fees and costs.

## VI. CONCLUSION

For all the foregoing reasons, the Class requests that the settlement be approved.

DATED: November 4, 2013            **CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By      *s/Kathleen Hartman*
        KATHLEEN M. HARTMAN
        Attorneys for Plaintiff
        **CHAD CHOLETTE**

G:\PLF\0100004\Mtns\mtn approve stlmt.doc

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA – LAS VEGAS

| | |
|---|---|
| CHAD CHOLETTE, individually, and on behalf of all other similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>INSTALLPRO, INC. a Utah corporation d.b.a. IPRO, INC. in Nevada,<br><br>　　　　Defendants. | Case No.:  2:10-cv-02153-APG-VCF<br>HON. ANDREW P. GORDON<br><br>**COLLECTIVE CLASS ACTION PURSUANT TO 29 U.S.C. §216(b**<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on November 4, 2013, I caused the following document(s):

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR
FINAL CERTIFICATION OF COLLECTIVE ACTION;
APPROVAL OF SETTLEMENT OF FAIR LABOR
STANDARD ACTS CLAIMS; AND APPROVAL OF
AWARD OF ATTORNEYS' FEES AND COSTS**

to be filed electronically with the Clerk of the Court through ECF, and that ECF will send an e-notice of electronic filing to the following counsel:

Bentley J. Tolk, Esq.
Heidi E. C. Leithead, Esq.
PARR BROWN GEE & LOVELESS
185 South State Street
Suite 800
Salt Lake City, UT  84111
Phone: (801) 257-7947
Fax:  (801) 532-7750
btolk@parrbrown.com
hleithead@parrbrown.com


/ / /

/ / /

Michael D. Rawlins, Esq.
DURHAM JONES & PINEGAR, P.C.
10785 West Twain Ave.
Suite 200
Las Vegas, Nevada 89135
Phone: (702) 870-6060
Fax: (702) 870-6090
mrawlins@djplaw.com
for the Defendant INSTALLPRO, INC.


Dated: November 4, 2013    **CALLAHAN, THOMPSON, SHERMAN**
                                               **& CAUDILL, LLP**

   ***S/ Kathleen Hartman***
Kathleen Hartman, SBN 219934
*khartman@ctsclaw.com*
2601 Main Street, Suite 800
Irvine, California 92614
(949) 261-2872
Attorneys for CHAD CHOLETTE,
individually, and on behalf of all others
similarly situated